**KOLLER LAW LLC**
David M. Koller, Esq. (Pa 90119)
Jordan D. Santo, Esq. (Pa 320573)                        *Counsel for Plaintiff*
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
T: (215) 545-8917
F: (215) 575-0826
davidk@kollerlawfirm.com
jordans@kollerlawfirm.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JACKEE WILLIAMS,** | : | **Civil Action No.** 26-3085 |
| **Plaintiff,** | : | |
| | : | |
| v. | : | **Complaint and Jury Demand** |
| | : | |
| **COLLIGAS FAMILY MARKETS LP** | : | |
| **d/b/a SHOPRITE OF** | : | |
| **WHITMAN PLAZA** | : | |
| | : | |
| **And** | : | |
| | : | |
| **EXTRITY SERVICES,** | : | |
| **Defendants.** | : | |

## CIVIL ACTION

Plaintiff, Jackee Williams (hereinafter "Plaintiff"), by and through her attorney, Koller Law, LLC, bring this civil matter against Colligas Family Markets LP d/b/a ShopRite of Whitman Plaza and Extrity Services (hereinafter collectively "Defendants"), for violations of Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), Section 1981 of the Civil Rights Act (42 U.S.C. §1981) ("Section 1981"), the Pennsylvania Human Relations Act ("PHRA") and the Philadelphia Fair Practices Ordinance ("PFPO"). In support thereof, Plaintiff avers as follows:

## THE PARTIES

1. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

2. Plaintiff is an adult individual residing in Philadelphia, PA.

3. Upon information and belief, Defendant Colligas Family Markets LP d/b/a ShopRite of Whitman Plaza ("Defendant ShopRite") is a grocery store with a location and corporate headquarters located at 330 Oregon Avenue, Philadelphia, PA 19148.

4. Upon information and belief, Defendant Extrity Services ("Defendant Extrity") is a provider of security services which operates in or around the County of Philadelphia and with a principal address at 5208 Deana Lane, Richton Park, Illinois 60471.

5. Upon information and belief, Defendant Extrity is also known as Extrity, LLC, with a principal address at 625 W. Adams Street #19, Chicago, Illinois 60661 and with a Registered Office at 1900 Market Street, Fl. 8, Philadelphia, PA 19103.

6. At all times relevant hereto, Defendants employed managers, supervisors, agents, and employees who Plaintiff alleges had the authority to make decisions concerning Plaintiff's employment.  In making said decisions, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

7. At all times relevant hereto, Defendants employed managers, supervisors, agents, and employees who acted directly or indirectly in the interest of the employer.  In so acting, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

## JURISDICTION AND VENUE

8. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

9. The Court may properly maintain personal jurisdiction over Defendants because the Defendants' contacts with this state and this judicial district are sufficient for the exercise

2

of jurisdiction and comply with traditional notions of fair play and substantial justice, thus satisfying the standard set forth by the United States Supreme Court in International Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny.

10. The Court may exercise original subject-matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal law.

11. The Court may also maintain supplemental jurisdiction over state law claims set forth herein pursuant to 28 U.S.C. § 1367(a) and Rule 18(a) of the Federal Rules of Civil Procedure because they are sufficiently related to one or more claims within the Court's original jurisdiction that they form part of the same case or controversy.

12. Venue is properly laid in the Eastern District of Pennsylvania pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2) because Plaintiff is domiciled in this judicial district, the Defendant is located in this judicial district and because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

## **EXHAUSTION OF ADMINISTRATIVE REMEDIES**

13. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

14. Plaintiff exhausted her administrative remedies under Title VII, the PHRA and the PFPO.

15. Plaintiff timely filed a Charge of Discrimination ("Charge") with the U.S. Equal Employment Opportunity Commission ("EEOC"), digitally signed on January 16, 2025, alleging race discrimination and retaliation against Defendant.

16. The Charge was assigned a Charge Number 530-2024-07010 and was dual filed with the Pennsylvania Human Relations Commission ("PHRC").

17. The EEOC issued Plaintiff a Dismissal and Notice of Rights ("Right to Sue") relative to

3

the Charge and that Notice is dated February 5, 2026.

18. Prior to the filing of this action, Plaintiff notified the EEOC of her intent to proceed with a lawsuit in federal court.

19. Plaintiff files the instant Complaint within ninety (90) days of her receipt of her Right to Sue in this matter, as it relates to her federal law claims, and more than one year has passed since filing her Charge of Discrimination with respect to her PHRA and PFPO claims. See Vandergrift v. City of Philadelphia, 228 F. Supp. 3d 464, 481-83 (E.D. Pa. 2017) (Kearney, J.) (finding the PFPO administrative exhaustion requirement met, even if the PFPO is not mentioned in the Charge so long as the Charge of Discrimination was filed (or dual-filed) with the PHRC and as the PFPO claims are based on the same facts with the same core grievance as those filed (or dual-filed) with the PHRC).

20. Plaintiff has exhausted her administrative remedies as to the allegations of this Complaint.

**MATERIAL FACTS**

**PLAINTIFF'S EMPLOYMENT HISTORY**

21. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

22. Plaintiff is African American.

23. On or about September 20, 2024, Defendant Extrity hired Plaintiff in the position of Security Guard to work at its client Defendant ShopRite's Oregon Avenue Philadelphia location in Whitman Plaza.

24. Defendants served as joint employers of Plaintiff within the meaning of employer under Title VII, Section 1981, the PHRA and/or the PFPO in that Defendants both exercised control over Plaintiff's schedule and work and Plaintiff's duties were of the kind in which

4

Defendant ShopRite normally would have served as employer but for Plaintiff's relationship with Defendant Extrity.

## DEFENDANT EXTRITY INCREASED PLAINTIFF'S SCHEDULED HOURS DUE TO HER STRONG PERFORMANCE

25. In or about October 2024, Defendant Extrity increased Plaintiff's scheduled from two (2) days per week to four (4) days per week due to Plaintiff's exemplary work performance.

## PLAINTIFF'S SUPERVISOR SENT PLAINTIFF HOME FROM HER SHIFT EARLY, AND THEN REMOVED PLAINTIFF FROM DEFENDANT SHOPRITE'S LOCATION

26. On or about November 14, 2024, Plaintiff was on shift at Defendant ShopRite's location.

27. Rich Santiago, Defendant Extrity's Supervisor, texted Plaintiff at approximately 12 p.m.

28. Santiago stated that Defendant Extrity was having issues with Defendant ShopRite and, as a result, Plaintiff needed to go home for the rest of the workday.

29. Plaintiff did not see Santiago's text message until approximately 3 p.m. when she went on break.

30. Thereafter, Plaintiff responded to the text asking what happened.

31. Santiago responded shortly after that Plaintiff's was being removed from Defendant ShopRite's location.

## SANTIAGO INFORMED PLAINTIFF THAT DEFENDANT EXTRITY'S HUMAN RESOURCES WOULD CONTACT HER, BUT NO ONE CONTACTED PLAINTIFF

32. Santiago stated that Defendant Extrity's Human Resources would be in touch with Plaintiff to explain what happened.

33. Plaintiff went home for the rest of the day as instructed.

34. Plaintiff waited for Defendant Extrity's Human Resources to contact her.

35. However, Defendant Extrity's Human Resources never contacted her.

5

## PLAINTIFF CONTACTED DEFENDANT EXTRITY'S CO-CEO AND DIRECTOR OF OPERATIONS REGARDING HER REMOVAL FROM DEFENDANT SHOPRITE'S LOCATION

36. Therefore, Plaintiff emailed Devon Lindsay (Caucasian), Co-CEO and Director of Operations at Defendant Extrity, to inquire about why she was removed from Defendant ShopRite.

## LINDSAY INFORMED PLAINTIFF THAT DEFENDANT SHOPRITE HAD ACCUSED HER OF THEFT, BUT THE PHOTOGRAPH OF THE PERSON INVOLVED IN THE THEFT WAS NOT PLAINTIFF

37. Lindsay emailed Plaintiff back that Defendant's Extrity was no longer permitted to have Plaintiff at Defendant ShopRite's site per Defendant ShopRite's orders.

38. Defendant ShopRite claimed that Plaintiff committed theft in or around August 2023 at its Oregon Avenue location.

39. Lindsay sent Plaintiff a picture of the shoplifter that Defendant ShopRite claimed to be Plaintiff.

40. While both Plaintiff and the person in the image were African American, it was clear Plaintiff was not the same person that was pictured in the image from the August 2023 theft.

41. Upon information and belief, Defendant ShopRite wrongfully assumed Plaintiff was the individual in the photo because of Plaintiff's race.

42. Upon information and belief, Defendant ShopRite affirmatively decided to not take any further steps to determine whether that was actually Plaintiff in the photo because of Plaintiff's race.

## PLAINTIFF COMPLAINED THAT DEFENDANTS ASSUMED THAT SHE WAS THE PICTURE OF PERSON IN THE PHOTOGRAPH DUE TO HER RACE

43. Plaintiff explained to Lindsay that she had never been to Defendant ShopRite's Oregon Avenue location, or even around that area, prior to working there and believed that Defendant ShopRite was assuming Plaintiff committed this crime solely because Plaintiff and the individual in the photo appeared to be of the same race.

44. Despite being aware that Plaintiff clearly was not the individual in the photograph provided by Defendant ShopRite, Defendant Extrity took no steps to correct the discriminatory treatment of Plaintiff while in his employ.

## DEFENDANTS TERMINATED PLAINTIFF

45. Thereafter, Plaintiff was discharged from her role at Defendant ShopRite.

46. Plaintiff asked Lindsay to be placed in a different work location through Defendant Extrity.

47. Despite being aware that Plaintiff engaged in protected activity when she complained of discriminatory treatment and that it was clear Plaintiff had done nothing wrong, Defendant Extrity, via Mark Daisy, Head of People for Defendant Extrity, claimed there were no open positions with Defendant Extrity for Plaintiff to work.

48. Defendants discriminated against Plaintiff due to her race and retaliated against Plaintiff for engaging in protected activity in violation of Title VII, Section 1981, the PHRA and the PFPO.

49. Defendants' acts and/or omissions were willful or performed with reckless disregard to Plaintiff's federal statutorily protected rights.

## COUNT I – RACE DISCRIMINATION
## <u>TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED</u>

50. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

51. Plaintiff is a member of protected classes in that she is African American.

52. Plaintiff was qualified to perform the job for which she was hired.

53. Plaintiff suffered adverse job actions, including, but not limited to termination.

54. Similarly situated people outside of Plaintiff's protected class were treated more favorably than Plaintiff.

55. Circumstances exist related to the above-cited adverse employment actions that give rise to an inference of discrimination.

56. Defendants discriminated against Plaintiff on the basis of race.

57. No legitimate, non-discriminatory reasons exist for the above-cited adverse employment actions that Plaintiff suffered.

58. The reasons cited by Defendants for the above cited adverse employment actions that Plaintiff suffered are pretext for discrimination.

59. Defendants willfully violated, or violated due to gross recklessness, Plaintiff's federal statutorily-protected rights.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT II – RACE DISCRIMINATION
## <u>PENNSYLVANIA HUMAN RELATIONS ACT</u>

60. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

61. The foregoing conduct by Defendants' constitutes unlawful discrimination against Plaintiff on the basis of her race (African American).

62. As a result of Defendants' unlawful race discrimination, Plaintiff has suffered damages as set forth herein.

WHEREFORE, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT III – RACE DISCRIMINATION
### PHILADELPHIA FAIR PRACTICES ORDINANCE

63. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

64. The foregoing conduct by Defendants' constitutes unlawful discrimination against Plaintiff on the basis of her race (African American).

65. As a result of Defendants' unlawful race discrimination, Plaintiff has suffered damages as set forth herein.

WHEREFORE, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT IV – RACE DISCRIMINATION
### SECTION 1981

66. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

67. Plaintiff is a member of a protected class in that she is African American.

68. Plaintiff was qualified to perform the job for which she was hired.

69. Plaintiff suffered adverse employment actions including, but not necessarily limited to, termination.

70. Similarly situated people outside of Plaintiff's protected class were treated more favorably than Plaintiff.

71. Circumstances exist related to the above cited adverse employment action(s) which give rise to an inference of intentional discrimination.

9

72. Defendants discriminated against Plaintiff on the basis of race.

73. No legitimate, non-discriminatory reasons exist for the above-cited adverse employment action(s) that Plaintiff suffered.

74. The reasons cited by Defendants for the above-cited adverse employment action(s) that Plaintiff suffered are pretext for discrimination.

75. Upon information and belief, Defendants' acts or omissions as described above were done with willful or reckless disregard of Plaintiff's statutory rights.

76. As a result of Defendants' unlawful race discrimination, Plaintiff has suffered damages as set forth herein.

WHEREFORE, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT V – RETALIATION
## TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED

77. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

78. Plaintiff engaged in protected activity protected by Title VII when she complained about race discrimination.

79. Thereafter, Defendants took adverse employment actions against Plaintiff, including, but not limited to, termination.

80. There exists a causal connection between Plaintiff's participation in the protected activity and the adverse employment action.

81. Defendants willfully violated, or violated due to gross recklessness, Plaintiff's federal statutorily-protected rights.

WHEREFORE, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

10

## COUNT VI – RETALIATION
## PENNSYLVANIA HUMAN RELATIONS ACT

82. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

83. Plaintiff engaged in activity protected by the PHRA when she complained about race discrimination.

84. Thereafter, Defendants took adverse employment actions against Plaintiff, including, but not limited to, termination.

85. There exists a causal connection between Plaintiff's participation in the protected activity and the adverse employment action.

**WHEREFORE,** Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT VII – RETALIATION
## PHILADELPHIA FAIR PRACTICES ORDINANCE

86. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

87. Plaintiff engaged in activity protected by the PFPO when she complained about race discrimination.

88. Thereafter, Defendants took adverse employment actions against Plaintiff, including, but not limited to, termination.

89. There exists a causal connection between Plaintiff's participation in the protected activity and the adverse employment action.

**WHEREFORE,** Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT VIII – RETALIATION
## SECTION 1981

90. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

91. Plaintiff engaged in activity protected by Section 1981 when she complained about race discrimination.

92. Thereafter, Defendants took adverse employment actions against Plaintiff, including, but not necessarily limited to, termination.

93. There exists a causal connection between Plaintiff's participation in the protected activity and the adverse employment action.

94. Upon information and belief, Defendant's acts or omissions as described above were done with willful or reckless disregard of Plaintiff's statutory rights.

95. As a result of Defendant's unlawful retaliation, Plaintiff has suffered damages as set forth herein.

**WHEREFORE,** Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, Jackee Williams, requests that the Court grant her the following relief against Defendant:

    (a)    Damages for past and future wage loss;

    (b)    Punitive damages;

    (c)    Compensatory Damages for non-economic harm including mental anguish and/or emotional pain and suffering;

    (d)    Reasonable attorneys' fees;

    (e)    Recoverable costs;

    (f)    Pre and post judgment interest;

    (g)    An allowance to compensate for negative tax consequences;

    (h)    A permanent injunction enjoining Defendants, their directors, officers, employees,

agents, successors, heirs and assigns, and all persons in active concert or participation with it, from engaging in, ratifying, or refusing to correct, employment practices which discriminate in violation of Title VII, Section 1981, the PHRA and the PFPO.

(i)     Order Defendants to institute and implement, and for its employees, to attend and/or otherwise participate in, training programs, policies, practices and programs which provide equal employment opportunities;

(j)     Order Defendants to remove and expunge, or to cause to be removed and expunged, all negative, discriminatory, and/or defamatory memoranda and documentation from Plaintiff's record of employment, including, but not limited, the pre-textual reasons cited for its adverse actions, disciplines, and termination; and

(k)     Awarding extraordinary, equitable and/or injunctive relief as permitted by law, equity and the federal statutory provisions sued hereunder, pursuant to Rules 64 and 65 of the Federal Rules of Civil Procedure.

## JURY TRIAL DEMAND

Demand is hereby made for a trial by jury as to all issues.

## CERTIFICATION

I hereby certify that to the best of my knowledge and belief the above matter in controversy is not the subject of any other action pending in any court or of a pending arbitration proceeding, nor at the present time is any other action or arbitration proceeding contemplated.

RESPECTFULLY SUBMITTED,

KOLLER LAW, LLC

Date: May 6, 2026          By:  */s/David M. Koller*
David M. Koller, Esquire
Jordan D. Santo, Esquire
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
215-545-8917
davidk@kollerlawfirm.com
jordans@kollerlawfirm.com

*Counsel for Plaintiff*

13